E-FILED
Thursday, 30 April, 2020  03:55:28 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

SHAD HAMMOND,              )
                                     )
               **Plaintiff,**     )
v.                            )      **No.: 19-cv-3281-JBM**
                                     )
STATE OF ILLINOIS, et al.,      )
                                     )
              **Defendants.**    )

### MERIT REVIEW ORDER

Plaintiff, proceeding *pro se*, filed a complaint alleging First Amendment retaliation and Eighth Amendment deliberate indifference pursuant to 42 U.S.C. §1983, and  violations of the Americans with Disabilities Act ("ADA") at the Western Correctional Center ("Western").[1] The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A.  In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor.  *Turley v. Rednour,* 729 F.3d 645, 649-51 (7th Cir. 2013).  However, conclusory statements and labels are insufficient.  Enough facts must be provided to "state a claim for relief that is plausible on its face."  *Alexander v. United States,* 721 F.3d 418, 422 (7th Cir. 2013)(citation and internal quotation marks omitted).  While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Plaintiff files an eight Count complaint against the following Defendants: the State of Illinois; the Illinois Department of Corrections ("IDOC"); Western, Western ADA Coordinator Ashcraft, unidentified ADA Committee members; paralegals Tracy Harrisson, Trevor Chandler

---

[1] Americans with Disabilities Act, 42U.S.C. § 12101, *et seq.*

1

and Brendan Mowen; Wardens Watson, Connelly and Snyder; Officers Finch, Crowder, and Bangert; and Administrative Review Board ("ARB") members Patty Schull and Patty Sneed.

The Court must make mention here of the difficulty it experienced in attempting to identify Plaintiff's claims. Plaintiff files an overly long complaint which is more in the nature of a daily journal or diary. Plaintiff provides excruciating detail of his day-to-day experiences, asserting a jumble of largely unrelated claims against a host of individuals. This resulted in the Court spending an inordinate amount of time and resources attempting to decipher Plaintiff's intent. Plaintiff is advised that he will be given leave to replead some of the claims, should he wish. He is placed on notice, however, that the failure to adhere to the Court's instructions may result in the dismissal with prejudice of an amended complaint.

In addition to his lengthy complaint, Plaintiff filed over 200 pages of attachments, often requesting that the Court refer to the attachments to more fully understand his claims. The Court declines to do so, or to consider the exhibits. *See Fitzgerald v. Dep't of Corr.*, No. 07-61, 2007 WL 951861, at *1 (W.D. Wis. Mar. 26, 2007). "Neither this court nor respondents are required to compare hundreds of documents with petitioner's complaint to determine what claims he may have." *Id*. at *2. *See also*, Fed.R.Civ. P. 8, which explains that a complaint should provide a short and plain statement of the claims.

Plaintiff requests compensatory damages and myriad forms of injunctive relief, including a full law library, elevator access, a main floor library, wheelchair accessible restrooms and cells, separate showers for disabled inmates, the installation of heat, electricity and cable in the receiving cells, overhaul of the ARB protocols and more complete investigation of grievances. The Court perceives Plaintiff's requests for injunctive relief as benefitting not only himself, but other inmates as well. While Plaintiff may represent himself, as a non-lawyer he may not

represent anyone other than himself. *See* 28 U.S.C. §1654; *Lewis v. Lenc-Smith Mfg. Co.*, 784 F.2d 829, 830 (7th Cir. 1986)(per curiam). To the extent that Plaintiff seeks relief on behalf of other inmates, it is DENIED.

<u>Count I</u>

In Count I, Plaintiff reveals that in 2003, prior to his incarceration, he suffered a gunshot wound to the neck and back of the head. Plaintiff sustained nerve damage and loss of function of his right hand, causing him to use his left hand almost exclusively. Plaintiff claims, without medical support, that over-use of the left hand has caused him to develop tendinitis, tennis elbow and carpal tunnel syndrome. As a result, he experiences pain with use, most notably with writing.

On an unidentified date, Plaintiff made a request to an unidentified individual for a typewriter as handwriting causes him pain. Plaintiff does not reveal to whom he made the request. The request was initially denied, but on May 20 July 20, 2016, the ADA Committee advised him that, in compliance with the ADA, they had ordered him a typewriter.

Plaintiff waited for seven months and when the typewriter was not forthcoming, he purchased one on his own. On May 21, 2018, the striker mechanized mechanism on his type-writer broke. The following day, Plaintiff spoke with ADA Coordinator Ashcraft, requesting that the typewriter be replaced. On May 23, 2018, Plaintiff intercepted Warden Watson while he was walking through the facility, asking that he speak to Ms. Ashcraft about the typewriter. On June 20, 2018, Plaintiff wrote an emergency grievance of the matter.

Plaintiff met with Defendant Ashcraft again on May 30, 2018. At that time, she informed him that she had spoken with the ADA Committee and it was "not looking good. " This, despite Plaintiff's protest that the Committee had previously found the typewriter to be an appropriate

ADA accommodation.  That same day, Plaintiff again asked Defendant Watson to look into the

matter and he agreed to do so.

On June 1, 2018, Plaintiff saw Defendant Warden Connelly entering the healthcare unit,

holding Plaintiff's emergency grievance.  When Plaintiff asked him about it, Defendant Connelly

allegedly answered, "maybe if you didn't write a grievance, I could have helped you, but it's too

late now."  On June 7, 2018, Plaintiff's grievance was denied as an emergency.

Plaintiff alleges that sometime between June 1, 2018 and July 1, 2018, he spoke with

Defendant Chandler, a paralegal in the law library.  Defendant Chandler informed Plaintiff that

he could use the law library typewriter as long as he submitted a request slip and brought his own

supplies.  When Plaintiff went to library on a subsequent date, he spoke with paralegal

Defendant Harrisson, who refused to allow him to use the typewriter.  Plaintiff claims,

inconsistently, that he did not wish to use the law library typewriter, but, instead, wanted

Defendant Harrisson's opinion as to the legal merits of this suit.  Plaintiff subsequently asked

Defendant Chandler to render an opinion as to the merits of this suit and to call Plaintiff's

counselor.  Defendant Chandler refused.

On October 18, 2018, Plaintiff learned that the typewriter had been denied by the ADA

Committee.  Plaintiff appealed the denial to the ARB.  Plaintiff subsequently spoke with

Samantha Reed an attorney at Equipment for Equality who indicated that she would send a

"demand letter" to Western to provide a typewriter.  It does not appear, however, that Ms. Reed

is representing Plaintiff in this matter.

Plaintiff asserts that he was allowed to use the law library typewriter but had to obtain

"call passes" from Defendant Mowen.  Defendant Mowen provided three call passes, two of

which fell on dates when Plaintiff had scheduled medical appointments.  Plaintiff complains that

4

he was generally issued only two library passes per week and that Defendant Chandler would not qualify him for "legal deadlines" to provide him additional time.  He also states, inconsistently, that when he claimed to have a legal deadline to file this case, he was issued three weekly passes. Plaintiff claims that these actions by Defendants Mowen and Chandler hampered his ability to file this lawsuit.

On November 14, 2018, Plaintiff met with Defendant Connelly, who asked whether he had the money to buy his own typewriter.  Plaintiff answered that he did not have the money to purchase a new one or to have the old one fixed.  Plaintiff complained that it should not be up to him to finance an ADA accommodation.  Later that day, however, he was provided a rather beaten-up typewriter by Defendant Finch.  The typewriter did not have a cover and the cover was removed from Plaintiff's broken typewriter and transferred to the second.  On January 3, 2019, this typewriter broke, and was no longer operational.

Plaintiff claims, with little detail, that on March 27, 2019, he was sent to Stateville Correctional Center ("Stateville") on a "medical hold."  Plaintiff claims that when the medical hold was lifted, Defendant Watson imposed an "ADA hold," delaying his return to Western. Plaintiff alleges that this action by Defendant Watson adversely affected his filing of this lawsuit. As Plaintiff repleads this allegation in Count VIII, with slightly more detail, it is not further considered here.

On September 12, 2019, Plaintiff was transferred to the Dixon Correctional Center ("Dixon").  He alleges, without detail, that he was not provided unidentified ADA accommodations at Dixon.  Plaintiff does not implicate any Dixon staff, asserting only that the claim is made to show IDOC's complicity with Western, Stateville and Dixon.

3:19-cv-03281-JBM   # 9   Page 6 of 19

Count II

In Count II, Plaintiff asserts that Defendant Ashcraft was deliberately indifferent to the hand pain he suffered for lack of a typewriter. Plaintiff does not claim that he had attempted to receive medical treatment from Defendant Ashcraft, and it is unlikely that he would have done so as Defendant was not a member of the medical staff. It appears, rather, that Plaintiff is asserting that her refusal to provide him a typewriter resulted in his having to handwrite documents which caused him pain.

In Counts III and IV, Plaintiff asserts ADA, deliberate indifference and First Amendment retaliation claims against Defendant Ashcraft for refusing to provide him a straight cane and doing so in retaliation for grievances he had filed against her. Plaintiff pleads that he had initially been issued a 4-prong quad cane in January 2014. Plaintiff claims that the quad cane was too heavy and, on July 3, 2016, Dr. Matticks, not a party, ordered that he be provided a straight cane. Plaintiff claims that Defendant Ashcraft would not authorize the straight cane for security reasons. Plaintiff claims that the heavy quad cane in fact, posed more security concerns than the lighter straight cane, and her actions were in retaliation for Plaintiff's filing grievances.

Two years later, Plaintiff was issued another order for a straight cane. He asked that order be taken directly to Warden Watson who approved it. Defendant Ashcraft, however, would not allow the straight cane to be issued until it had been engraved. Even after the engraving, Defendant did not release the cane until so ordered by Defendant Watson. Plaintiff asserts that he did not receive the straight cane until November 9, 2018, approximately 3 years after Dr. Maddox initially ordered it.

In Count V, Plaintiff alleges the lack of ADA accommodations in the shower, restrooms and dayrooms. He also alleges that he was not provided an ADA helper, not single-celled and

not allowed to use a laundry bag to carry his belongings, an accommodate he needed due to the limited function in his right hand and need to hold a cane in his left.  Plaintiff claims that he was not given adequate time to shower and, due to Defendant Ashcraft's efforts, no longer allowed to shower in the healthcare unit.  Plaintiff claims that when he sits on a shower bench, the genitals of other inmates are mere inches from his face, causing him degrading shame and fear.  Plaintiff grieved the shower accommodations and asserts that Defendants Shull and Sneed of the ARB denied his grievance without a hearing.

Plaintiff alleges that on February 6, 2018. Dr. Matticks ordered that he be given a wheelchair glove for his right hand and, on March 6, 2018, that he be allowed to use a laundry bag to carry his books.  Defendant Ashcraft refused both requests, based on unspecified security concerns.  Plaintiff asserts that on March 14, 2017, he found two inmates who were willing to act as his ADA helpers.  When he requested that Defendant Ashcraft authorize this, she did not provide a response.

On March 31, 2017, Plaintiff underwent an unidentified surgery, likely carpal tunnel surgery.  Plaintiff claims that when he returned to the housing unit, Defendant Ashcraft had him placed in the very last cell on the wing, rendering him unable to use the phone, obtain ice or other amenities.  He claims that there were no toilets on the first floor other than the toilets in the cells. Plaintiff was unwilling to leave his cell as, when he left, the cell was locked and he had no first-floor access to a toilet.  As a result, he was unable to participate in dayroom and other activities.

On November 2, 2017, Plaintiff learned that the ADA Committee had denied him an ADA helper, adequate access to a restroom, a single cell, unspecified shower accommodations, a wheelchair glove, and a laundry bag to carry his books.

7

In Count VI, Plaintiff alleges that Defendant Ashcraft violated the ADA when she refused to honor his low gallery permit, assigning him to an upstairs cell at the end of the hallway.  Plaintiff alleges that Defendant did so in retaliation for his grievances against her.

In Counts VI and VII, Plaintiff alleges that, on three occasions, he was placed in a receiving unit cell which did not have electricity or heat as the utilities in the downstairs receiving cells had been disconnected by Western officials.  Plaintiff explains that the receiving unit is used for inmates on suicide watch, as well as overflow for segregation and administrative detention.  Plaintiff was placed there for the first time on September 14, 2017 and held for five days. He was held in receiving again from March 3, 2018 to March 5, 2018.  Plaintiff claims this was punishment for his having refused housing.  Plaintiff had been ordered to move to 4 House but asserts his ADA restrictions could only be accommodated in 1 House or 2 House.  Plaintiff was placed in receiving again from March 22, 2019 to March 27, 2019, in preparation for being sent out on a medical furlough.  Plaintiff claims that the receiving cells were cold at night and, when he was there in March, the temperatures were in the low 30s.  Plaintiff complains that he was only given a faux-wool blanket which was too small to cover him.

Plaintiff grieved these conditions, alleging that Defendant Ashcraft responded "with lies" and that Defendants Shull and Sneed denied his grievances, without undertaking an investigation.  He also realleges that his placement in the receiving cells was done in retaliation for filing grievances.  He does not, however, identify the individual whom he holds responsible for placing him in the receiving unit.

In Count VIII, Plaintiff, pleads retaliation by IDOC; Western; Officers Bangert, Finch, and Crowder; and ARB Defendants Shull and Sneed.  Plaintiff claims that on November 15, 2019, he received a "state loan" typewriter and, two days later, was taken to segregation under

"false claims."  Plaintiff does not identify the nature of the charge, but claims it was written by Defendant Bangert and done in retaliation, not identifying any First Amendment exercise which prompted the retaliation.

Plaintiff alleges that, as a result of the disciplinary charge he was held in segregation for one day without heat, electricity, access to his typewriter or a bandage for the stitches in his hand.  Two days later, Plaintiff was taken for a medical furlough do his due to his hand being infected.  Plaintiff claims this was from unclean conditions in segregation and the lack of a wrap.

On November 21, 2019, Plaintiff and four other inmates received "surprise" disciplinary tickets for drugs and drug contraband.  Plaintiff feared he would suffer "violent retaliation" from the other inmates and told the hearing officer.  "I just don't want six months C-grade, and they'll be no questions of chain of command or actions 'civil' to you, or writer of ticket, just let others 'off', I'll say it got stuck in hand bandages."  Plaintiff's meaning here is unclear and does not appear to state a constitutional claim.

Plaintiff further alleges that on November 22, 2019, Defendant Finch took his Nike shoes upon order of Defendant Snyder "as incoming items were not allowed".  At an unidentified point, Plaintiff was transferred to the Dixon Correctional Center ("Dixon") and complains that his typewriter was not sent with him.

Plaintiff also pleads that on December 31, 2019, Defendant Officer Crowder conducted a random shakedown of his cell.  At that time, he confiscated Plaintiff's television for, confusingly, not having the required tape on the buttons.  The television was not returned until January 17, 2019.  Plaintiff alleges that Defendant Crowder confiscated the television in retaliation for Plaintiff filing grievances.

Plaintiff makes an additional claim against Defendant paralegal Chandler, that after January 3, 2019, he denied Plaintiff regular use of the law library typewriter. He also reiterates his claim that Defendant Watson placed him on an ADA hold delaying his return from Stateville to Western. Plaintiff alleges that, as a result of the delay he was deprived of cosmetics, state pay, programs for earning good time credit and return to his primary care physician "after Stateville's Doctor cut [plaintiff's] medication w/out cause of claimant's medical records to do so." Plaintiff also reasserts his claims that ARB members Shully and Sneed wrongly denied his appealed grievances without conducting a proper investigation.

## ANALYSIS

"Congress enacted the ADA 'to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.' The Act 'forbids discrimination against persons with disabilities in three major areas of public life: (1) employment, which is covered by Title I of the statute; (2) public services, programs and activities, which are the subjects of Title II; and (3) public and private lodging, which is covered by Title III.' It is now well-settled that prisons and correctional facilities are covered by Title II." *Phipps v. Sheriff of Cook County*, 681 F. Supp. 2d 899, 913 (N.D. Ill. 2009) (internal citations omitted).

To allege a violation of Title II, Plaintiff must sufficiently plead: "[1] that he is a 'qualified individual with a disability,' [2] that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and [3] that the denial or discrimination was 'by reason of' his disability." *Id.* at 913–914. Plaintiff's allegations that he is unable to use his right hand and has a left hand which is injured and of limited function appears to adequately allege disability. *See* 42 USCA § 12102(1)(A)

10

defining disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual." Barriers to showering, toileting and recreational areas may rightly be asserted under Title II. *Phipps*, 681 F. Supp. 2d at 915-16.

Plaintiff alleges that the State of Illinois, IDOC, Western and various Western employees, Defendant Ashcraft chief among them, violated his ADA rights by not providing him a personal typewriter. Firstly, the ADA does not apply to individual Defendants as it does not provide for personal liability. The only proper defendant in an ADA claim is the state agency or a state official in his or her official capacity. IDOC employees are not amendable to suit under either the ADA or Rehabilitation Act. *Hogle v. Baldwin*, No. 17-01059, 2017 WL 4125258, at *4 (C.D. Ill. Sept. 18, 2017). *See also, Jaros v. Illinois Dept. of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012).

Secondly, while the Count I ADA claim might otherwise proceed against IDOC, Plaintiff fails to plead a colorable claim. Plaintiff has pled that he was given two, and sometimes three passes per week to use the law library typewriter. *See Hildreth v. Butler*, No. 15C-00831, 2018 WL 3438895, at *1 (S.D. Ill. July 17, 2018) (denying ADA claim at summary judgment where plaintiff had three times weekly access to law library typewriter). Furthermore, Plaintiff fails to plead that he was denied a typewriter "by reason of' his disability," particularly as he pleads that Defendant Ashcraft voiced security concerns with this arrangement. *See Phipps*, 681 F. Supp. 2d at 913–914. Plaintiff fails to plead a colorable claim that the failure to provide him a personal typewriter for use in his cell violated the ADA. This claim is DISMISSED as to all Defendants.

Plaintiff will also be allowed to proceed on his Count I claim that, when Warden Connelly refused him a typewriter, he did so in retaliation for Plaintiff's filing of an emergency grievance. Plaintiff's claims that Defendant paralegal Harrison refused to allow him to use the

law library typewriter on one occasion, that paralegals Chandler and Mowen refused to evaluate

Plaintiff's legal claims, and that Defendant Mowen gave him only three library call passes

appear to allege a First Amendment access to courts claim.  This claim is unrelated to the issues

of this case and is is DISMISSED without prejudice to Plaintiff filing it in a separate action.

"[D]efendants are properly joined in a single action only if they are parties to a single transaction

or occurrence common to all defendants, and the claims against them involve a common

question of fact or law.  *Ghashiyah v. Frank*, No. 05-0766, 2008 WL 680203, at *2 (E.D. Wis.

Mar. 10, 2008) citing *Ghashiyah v. Frank,* 2007 U.S. Dist. LEXIS 93874, *4, 2007 WL 2061053

(W.D.Wis. 2007).  *See also, George v. Smith,* 507 F.3d 605, 607 (7th Cir. 2007), "[u]nrelated

claims against different defendants belong in different suits."

      In Count II, Plaintiff asserts that Defendant Ashcraft was deliberately indifferent for

refusing to provide him a typewriter as an ADA accommodation.  As the Court has noted, not

only does this fail to state an ADA claim, Defendant Ashcraft is not the proper Defendant.

These allegations are DISMISSED.

      In Count III and IV, Plaintiff alleges that Defendant Ashcraft exhibited Eighth

Amendment deliberate indifference and retaliated when she refused him a straight cane on July

3, 2016 and, several years later, delayed his receiving a straight cane though it had been ordered

by a physician on both occasions.  There are not allegations explaining Ashcraft's authority, or

lack thereof, to provide or deny Plaintiff a cane.  Notwithstanding, this claim will be allowed to

proceed pending a more fully developed record.  Plaintiff is placed on notice, however, that the

July 3, 2016 claim might well be outside the applicable statute of limitations.  "In Illinois, the

statute of limitations period for § 1983 claims is two years, 735 ILCS 5/13-201."  *Draper v.

Martin,* 664 F.3d 1110, 1113 (7th Cir. 2011).  The statute of limitations will be extended

beyond July 3, 2016, however, during the time Plaintiff was actively pursuing his related administrative remedies, if this was the case. *See Johnson v. Rivera,* 272 F.3d 519, 521-22 (7th Cir. 2001).

In Count V, Plaintiff alleged that the ADA Committee is liable for the denial of Plaintiff's request for shower accommodations, an ADA helper, a single cell, a wheelchair glove, and a laundry bag to carry his books. Plaintiff has pled that the wheelchair glove and a laundry bag had been ordered by a physician, so this claim shall procced. It shall also proceed as to Plaintiff's request for shower accommodations. However, Plaintiff proffers nothing to support that he needed an ADA helper or to be in a single cell, and these claims are DISMISSED. As IDOC is the proper Defendant, Count V will proceed against IDOC on an ADA claim for the failure to provide shower accommodations, a wheelchair glove, and a laundry bag. The ADA Committee is DISMISSED.

In Count V Plaintiff alleges that Defendant Ashcraft retaliated when she refused to allow him to shower in the healthcare unit and placed him in a cell where he did not have easy access to a restroom or dayroom. However, Plaintiff's failure to plead allegations showing that he had a right to shower in the healthcare unit or to be placed in the cell of his choosing fails to plead a retaliation claim. *Zimmerman v. Tribble,* 226 F.3d 568, 573 (7th Cir.2000) (plaintiff must set forth "a chronology of events from which retaliation may plausibly be inferred."); see also, *Johnson v. Kingston*, 292 F.Supp.2d 1146, 1152–53 (W.D. Wis. 2003) (the protected activity must be a substantial or motivating factor in defendant's decision to take the adverse action).

Plaintiff's claims that ARB members Defendants Shull and Sneed denied his grievances fails to state a claim. An individual does not become liable for an alleged constitutional violation merely by denying a grievance. *See George*, 507 F.3d at 609 (rejecting that "anyone who knows

13

about a violation of the Constitution, and fails to cure it, has violated the Constitution himself…Only persons who cause or participate in the violations are responsible.")  *See also, Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).  "[T]he alleged mishandling of [Plaintiff's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim."  The claims that Defendants Shully and Sneed did not provide a hearing also fail as it is the prison Adjustment Committees which is tasked with providing a hearing, not the ARB.  Ill. Admin. Code tit. 20, § 504.20.

Count VI will proceed on the claim that Defendant Ashcraft violated Plaintiff's First Amendment rights when she refused to honor his low gallery permit and assigned him to an upstairs cell at the end of the hallway, in retaliation for Plaintiff's grievances against her.

Plaintiff's allegations in counts VI and VII as to his conditions of confinement fail to state a claim as he does not identify whom he holds liable for placing him in the receiving unit. Furthermore, claims regarding the conditions in the receiving unit in September 2017 and March 2018, are unrelated to the underlying claims and are dismissed for misjoinder.

In Count VIII, Plaintiff asserts a § 1983 claim for violation of his First Amendment rights, claiming that IDOC and Western, as well as Officers Bangert, Finch, and Crowder, and ARB Defendants Shull and Sneed retaliated against him.  As previously noted, IDOC and Western are not "persons" amendable to suit under section 1983 and they are dismissed.

Plaintiff's allegations against Defendant Bangert are also dismissed as he claims only that Defendant wrote him a disciplinary ticket.  Plaintiff does not identify the substance of the ticket or identify the protected activity for which he allegedly suffered the retaliation.  Furthermore, this claim appears unrelated to the underlying claims and is directed against a different Defendant.  *See Ghashiyah,* 2007 WL 2061053, at *4.  The retaliation claim against Defendant

Bangert is DISMISSED without prejudice to Plaintiff asserting it in a separate action.  As this is the only claim against Defendant Bangert, he is DISMISSED.

Plaintiff's Count VIII allegations regarding the conditions during his one-day stay in segregation, and lack of bandage to his hand are dismissed for misjoinder.  In addition, Plaintiff does not indicate whom he holds responsible for placing him in these conditions, and whom he holds responsible not providing a bandage.  Plaintiff's confusing allegations that he was charged with possessing contraband and told the hearing officer that he, Plaintiff, was willing to forget the matter, does not state a cognizable claim and is DISMISSED.

In Count VIII Plaintiff makes various property claims.  These are that Defendant Finch took his Nike shoes, that when he was transferred to Dixon his typewriter was not sent with him, and that Defendant Crowder confiscated his television.  Allegations regarding the deprivation or destruction of private property do not state a constitutional claim.  *Wynn v. Southward*, 251 F.3d 588, 592-93 (7th Cir. 2001).  If Plaintiff wishes to pursue these actions, he must do so through the Illinois Court of Claims.  *Stewart v. McGinnis,* 5 F.3d 1031, 1035-36 (7th Cir. 1993).  These claims are DISMISSED.  As this is the only claim against Defendant Finch, he is DISMISSED.

While Plaintiff might otherwise proceed under § 1983 claim for Defendant Crowder having allegedly confiscated the television in retaliation for Plaintiff's filing of grievances, this claim is unrelated to the underlying action as not representing a single transaction or occurrence common to all Defendants.  *Ghashiyah*, 2008 WL 680203, at *2.  This claim is DISMISSED.  As this is the only remaining claim against Defendant Crowder he is DISMISSED as well.

Plaintiff also alleges in Count VIII that Defendant Chandler denied him regular use of the law library typewriter after January 3, 2019.  As previously discussed, this appears to allege a

claim for lack of access to the courts and is unrelated to the claims at issue.  This claim, and Defendant Chandler, are DISMISSED.

Plaintiff's Count VIII claim that Defendant Watson placed him on an ADA hold is too devoid of detail to state a colorable claim and, additionally, appears unrelated to the issues in this case.  This claim is DISMISSED.  Plaintiff's reasserted claims that ARB members Shully and Sneed's denial his appealed grievances is DISMISSED for the reasons previously given. Defendants Shully and Sneed are DISMISSED.

Plaintiff makes two claims as to Defendant Warden Snyder.  The first is that on May 30, 2018, Defendant Snyder agreed to speak with Defendant Ashcraft about providing Plaintiff a typewriter.  The second is that Defendant Snyder ordered Officer Finch to confiscate Plaintiff's Nikes on his return to Western as incoming items were not allowed.  Neither allegation rises to the level of a constitutional claim.  Defendant Snyder is DISMISSED.

**IT IS THEREFORE ORDERED:**

1.     This case shall proceed on the Count II First Amendment claim that Warden Connelly refused to address Plaintiff's request for a typewriter in retaliation for Plaintiff having filed an emergency grievance; the Count III and IV Eighth Amendment claims that Defendant Ashcraft was deliberately indifferent in refusing, and delaying, Plaintiff receiving a straight cane; the Count V ADA claim that IDOC failed to provide shower accommodations, a wheelchair glove and laundry bag; and the Count VI First Amendment claim that Defendant Ashcraft refused to honor Plaintiff's low gallery permit and assigned him to an upstairs cell at the end of the hallway in retaliation for his filing grievances against her.  All remaining claims and all other Defendants are DISMISSED.  Other claims will not be included in the case, except in the Court's discretion

16

upon motion by a party for good cause shown, or by leave of court pursuant to Federal Rule of

Civil Procedure 15.

   2.      Plaintiff will be given an opportunity to amend, within 30 days, should he wish.

Plaintiff is placed on notice, however, that any amended complaint  is to clearly state the claims

against each individual Defendant, and he is not to plead against Defendants collectively.

*Marshall v. Knight,* 445 F.3d 965, 968 (7th Cir. 2006).  Fed. R. Civ. P. 8(a) requires a "short and

plain statement of the claim sufficient to notify the defendants of the allegations against them and

enable them to file an answer."  Plaintiff is not to replead any claims dismissed for misjoinder and

is informed that if he files an amended complaint which does not comply with these instructions,

the amended complaint will be dismissed with prejudice, for failure to follow the Court's orders.

   3.      Plaintiff's motions for status [6] and [7] are rendered MOOT. Plaintiff's request

for settlement conference [8] is DENIED at this time. Plaintiff is free, however, to contact

opposing counsel, once counsel has entered an appearance, to discuss settlement.

   4.      The Clerk is directed to send to each Defendant pursuant to this District's internal

procedures: 1) a Notice of Lawsuit and Request for Waiver of Service; 2) a Waiver of Service; 3)

a copy of the Complaint; and 4) a copy of this Order.

   5.      If a Defendant fails to sign and return a Waiver of Service to the Clerk within 30

days after the Waiver is sent, the Court will take appropriate steps to effect formal service on that

Defendant and will require that Defendant pay the full costs of formal service pursuant to Federal

Rule of Civil Procedure 4(d)(2).  If a Defendant no longer works at the address provided by

Plaintiff, the entity for which Defendant worked at the time identified in the Complaint shall

provide to the Clerk Defendant's current work address, or, if not known, Defendant's forwarding

address.  This information will be used only for purposes of effecting service.  Documentation of

forwarding addresses will be maintained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

6.      Defendants shall file an answer within the prescribed by Local Rule.  A Motion to Dismiss is not an answer. The answer it to include all defenses appropriate under the Federal Rules.  The answer and subsequent pleadings are to address the issues and claims identified in this Order.

7.      Plaintiff shall serve upon any Defendant who has been served, but who is not represented by counsel, a copy of every filing submitted by Plaintiff for consideration by the Court and shall also file a certificate of service stating the date on which the copy was mailed. Any paper received by a District Judge or Magistrate Judge that has not been filed with the Clerk or that fails to include a required certificate of service will be stricken by the Court.

8.      Once counsel has appeared for a Defendant, Plaintiff need not send copies of filings to that Defendant or to that Defendant's counsel.  Instead,  the Clerk will file Plaintiff's document electronically and send notice of electronic filing to defense counsel.  The notice of electronic filing shall constitute notice to Defendant pursuant to Local Rule 5.3. If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.

9.      Counsel for Defendants is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Counsel for Defendants shall arrange the time for the depositions.

10.     Plaintiff shall immediately notice the Court of any change in mailing address or phone number.  The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

 **IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO**:

1)  ATTEMPT SERVICE ON DEFENDANTS PURSUANT TO THE STANDARD

PROCEDURES; AND,

2) SET AN INTERNAL COURT DEADLINE 60 DAYS FROM THE ENTRY OF

THIS ORDER FOR THE COURT TO CHECK ON THE STATUS OF SERVICE AND ENTER

SCHEDULING DEADLINES.

LASTLY, IT IS ORDERED THAT IF A DEFENDANT FAILS TO SIGN AND

RETURN A WAIVER OF SERVICE TO THE CLERK WITHIN 30 DAYS AFTER THE

WAIVER IS SENT, THE COURT WILL TAKE APPROPRIATE STEPS TO EFFECT

FORMAL SERVICE THROUGH THE U.S. MARSHAL'S SERVICE ON THAT

DEFENDANT AND WILL REQUIRE THAT DEFENDANT TO PAY THE FULL COSTS OF

FORMAL SERVICE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 4(d)(2).


ENTERED: __4/30/2020_____


_____s/Joe Billy McDade_____
JOE BILLY McDADE
UNITED STATES DISTRICT JUDGE